**Sidney R. HERTZ, Appellant,**

v.

**Iris BEACH, Shirley Hawkins, and Lonnie Anderson, Appellees.**

**No. S–12884.**

Supreme Court of Alaska.

July 10, 2009.

---

Sidney R. Hertz, pro se, Spring Creek Correctional Center, Appellant.

Ruth Botstein, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

An inmate incarcerated by the Alaska Department of Corrections sued two nurses and a dentist, alleging they violated various professional duties and state and federal laws by failing to treat his dental problems timely or adequately. The superior court held that the inmate did not produce enough evidence, expert or otherwise, to support his claims and granted summary judgment in favor of the defendants. We affirm the superior court's decision on all claims except one against the dentist; we reverse the decision as to that single claim, vacate the judgment against the prisoner for attorney's fees, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Sidney R. Hertz was incarcerated at the State of Alaska's Lemon Creek Correctional Center in Juneau. Iris Beach and Shirley Hawkins are nurses employed by the Department of Corrections (DOC) at Lemon Creek. Dr. Lonnie Anderson, a private dentist, provides dental care to Lemon Creek inmates under a contract with DOC.

Hertz, who suffers from advanced periodontal disease, wore an upper partial denture secured to his remaining teeth with clasps. On April 28, 2005, an oral surgeon extracted two of Hertz's upper teeth. That same day Hertz filed a medical request for a new partial denture, complaining that his existing one no longer fit properly because of the extractions. On April 30 Beach advised Hertz that he was "on the dental list."

On May 24 Hertz filed a grievance (1) complaining that he had requested a new upper partial denture on April 28, and (2) requesting to see the dentist to have an impression made for a new upper partial denture. On June 6 Hertz submitted a medical request to have an impression made for a new upper partial denture, noting that the dentist had been to the prison twice without seeing him. Hertz was advised by Hawkins the next day that his name had "been placed on the list to see the dentist." Hertz reiterated his medical request on June 27, and on June 30 received the same response, this time from Beach.

On July 28 Hertz wrote to the DOC Commissioner's office asking about the status of his May 24 grievance. On August 16 Hertz filed another grievance: (1) stating that there had been no dentist at the prison for over eight weeks, he had been waiting four months for a new upper partial denture, and his existing upper partial denture was continually bruising the roof of his mouth; (2) asking whether a lawsuit was necessary to get dental treatment; and (3) requesting an appointment with a dentist to get an impression for a new upper partial denture.

On August 22 Hertz submitted another medical request, noting that it had been nine

weeks since a dentist had been to the prison, that he needed a new upper partial denture, and that his existing upper partial denture was continually bruising the roof of his mouth. Beach responded that day that Hertz was "on the dental list."

In a memo dated August 24 regarding Hertz's August 16 grievance, Beach advised the prison compliance supervisor of the sequence of events for Hertz's medical requests, stated that Hertz "must be seen by the dentist and a request for a new partial plate must be submitted to DOC Medical for approval or denial," and recommended that Hertz see the dentist so the dentist could complete the forms necessary "for approval or denial."

On September 12 Hertz submitted another medical request, noting that the dentist had been to the prison on September 10 but had not called Hertz to see him. Hertz demanded to see the dentist immediately and threatened to file a lawsuit. The next day Hawkins replied that Hertz's name was "on the list to see the dentist."

Dr. Anderson saw Hertz on September 17 and took an impression for a new upper partial denture. The record is unclear as to when it did so, but DOC approved the replacement of Hertz's upper partial denture.

Hertz filed another medical request in December 2005, asking to see the dentist and receive his new upper partial denture. He was advised by Beach that he was "on the list to see the dentist."

On February 11, 2006, Hertz was seen by Dr. Anderson. The record does not reflect whether Dr. Anderson had received a new upper partial denture from the September 17, 2005, impression, but Dr. Anderson took another impression because Hertz's teeth had shifted in the interim.

On February 13 DOC responded to Hertz's original May 2005 grievance about his upper partial denture, noting that approval for a new partial plate had been granted. On February 14 DOC affirmed an earlier denial of Hertz's August 2005 grievance as duplicative of his original grievance.

Hertz received his new upper partial denture on April 8, 2006. Hertz believed the new upper partial denture did not fit and told this to Dr. Anderson when he received it.

A few days before receiving the new upper partial denture, Hertz had submitted a medical request complaining of a cavity that made brushing his teeth painful. Dr. Anderson examined the cavity on April 8, 2006, when he installed the new upper partial denture, and described 'the cavity as "small and non-acute . . . a low priority . . . requir[ing] only 'routine dental treatment.' "

Hertz submitted a medical request on April 9, complaining that "nothing has been done about my cavity." He filed a grievance on April 19, complaining that Dr. Anderson had again visited Lemon Creek but had not seen Hertz or treated his tooth.

On July 10 Hertz complained of a toothache and Beach notified a doctor, who authorized the use of ibuprofen and a topical pain reliever as needed for thirty days. Hertz filed a grievance on July 26, stating that his toothache was under control with his pain' medications but demanding that his tooth and his upper partial denture be fixed. That day DOC's medical director authorized a referral to another dentist,' Dr. David Logan, to examine and treat the decayed tooth and to adjust the upper partial denture if necessary. Dr. Logan extracted the decayed tooth the next day after concluding it was "mobile due to periodontal disease." Dr. Logan noted that Hertz's denture fit correctly, and that "there are no adjustments that will improve its function." Dr. Logan also recommended removing the rest of Hertz's upper teeth and constructing a full denture as a long-term treatment goal.

In September Hertz was seen by a DOC staff dentist in Anchorage, Dr. Geraldine Morrow, who advised Hertz that he should have all remaining upper teeth extracted to make room for a full denture. Hertz agreed and later received the full denture.

**B. Proceedings**

In February 2006, shortly before Hertz saw Dr. Anderson for the second impression, Hertz filed suit against Beach, Hawkins, Dr. Anderson, and DOC seeking: (1) a declaration that the defendants had violated his

state constitutional and other rights; (2) injunctive relief ordering the defendants to give Hertz a new upper partial denture; (3) $5,000 for his pain and suffering; (4) punitive damages; (5) costs and attorney's fees; and (6) such other relief the court believed appropriate. After resolving filing fee issues, Hertz made service efforts in July. Hertz did not effect proper service on DOC, and on August 29 an order was issued directing Hertz to declare whether he was suing DOC. On September 6 Hertz filed a motion for leave to file an amended complaint eliminating DOC as a defendant. In his allowed amended complaint Hertz alleged that Beach, Hawkins, and Dr. Anderson committed medical malpractice and violated constitutional prohibitions against cruel and unusual punishment.[1]

Hertz served interrogatories and a request for production of a copy of Dr. Anderson's employment contract with DOC. When the contract was not produced, Hertz moved to compel production of the contract and other documents. He also moved for summary judgment as to Beach, arguing that because Beach's interrogatory responses had been signed by her attorney, and not by Beach personally, the interrogatories to her should be held "admitted as true." On December 5, 2006, the superior court denied Hertz's motion for summary judgment, but ordered service of properly signed interrogatory responses from Beach within twenty days. The court also granted Hertz's motion to compel production of the Anderson contract.

Hertz later moved for sanctions against the defendants' attorney, Paula Jacobson, for alleged failure to comply with the court's December 5 order and for alleged false statements. The court denied Hertz's motion.

The defendants moved for summary judgment in March 2007. They submitted Hertz's dental records from 1999 forward, an affidavit from each defendant, and an affidavit from DOC staff dentist Dr. Morrow, presented as an expert.

In their affidavits Beach and Hawkins described how dental care is obtained at Lemon Creek—to receive dental care an inmate must be placed on the "dental list," a list compiled by Beach and Hawkins to record inmates' dental needs. The nurses described four ways for an inmate's name to be placed on the dental list:

(a) a DOC medical provider (physician or physician's assistant) has determined that the inmate needs a dental evaluation[;] (b) one of the nurses has screened a newly remanded inmate and determined that he has visible dental problems that may require dental treatment[;] (c) the dentist has asked to see the inmate for continuing care[;] or (d) the inmate has submitted a [medical request for] care.

According to Beach and Hawkins their only role with respect to dental services at Lemon Creek is to compile the list. They stated that they "[o]ccasionally ... may ask Dr. Anderson to see a newly remanded inmate who has an obvious dental infection or another type of obvious dental problem that may require urgent care," but "[t]he ultimate decision regarding treatment priorities lies with Dr. Anderson," who "reviews the 'dental list' and determines which inmates need to be treated." They also stated that they "do not provide dental services to inmates nor ... assist the dentist in anyway [sic] when he performs dental examinations or provides dental treatment to inmates."

In his affidavit Dr. Anderson described Hertz's treatment history: (1) when Hertz

---

1. At about the time of Hertz's amended complaint, Hertz agreed to have his remaining upper teeth removed so that a full denture could be fitted. This mooted his request for injunctive relief, leaving only his claim for damages.

Hertz also alleged Dr. Anderson's conduct violated the terms of the settlement agreement between DOC and state prisoners in *Cleary v. Smith*, No. 3AN–81–4274 CIV (Alaska Super., Sept. 21, 1990), and DOC's own policies and procedures regarding access to health care. Both the *Cleary* settlement and DOC policies and

procedures require that prison care meet the standard of care that non-prisoners expect—in effect, that prison health care not be negligent. *Id.* at 16 ("All inmates shall be entitled to necessary medical, dental and mental health services comparable in quality to those available to the general public."). Thus even assuming Hertz had a private cause of action against the named defendants under the settlement or internal DOC regulations, which we need not address, it would be resolved the same way as his medical malpractice claims.

first requested his denture be adjusted after the April 28, 2005, tooth extractions, Dr. Anderson determined that under DOC policies and procedures "Hertz's request was not classified as ... very urgent" and that in Dr. Anderson's "clinical and professional judgment, Hertz's request did not have priority over inmates with more acute dental needs"; (2) in September 2005 he "made an impression of Hertz's teeth to begin the process of making a new plate"; (3) he could not treat inmates at Lemon Creek from October to December 2005 because the dental facility was "out of commission"; (4) as a result it took "almost two months to work [his] way through the backlog of inmates with urgent and moderately urgent dental needs"; (5) in February 2006 he took a second impression of Hertz's teeth because they had shifted; (6) he gave Hertz the new upper partial denture on April 8, 2006, and adjusted it; and (7) Hertz's cavity, examined on April 8, 2006, was "small and non-acute" and in Dr. Anderson's "professional and clinical judgment ... not an urgent matter."

Dr. Morrow stated in her affidavit that after examining Hertz and his medical records, it was her opinion that: (1) replacing the partial denture was not "an emergent or urgent problem"; (2) Hertz's cavity was "small and non-acute" and "[t]he tooth needed to be extracted, not filled"; and (3) the new upper partial denture was "properly fitted and there were no adjustments that would improve its function." She concluded that "Dr. Anderson and DOC met the standard of care" and "did not cause any medical/dental injury to Mr. Hertz."

After Hertz submitted responsive briefing, the superior court issued a preliminary order on the defendants' summary judgment motion. The court stated that Hertz's medical malpractice claims required proof that "the defendant(s) failed to exercise the knowledge or skill that similar health care providers ordinarily exercise under the circumstances." Noting that claims for breach of professional duty require expert testimony, the court stated that "[w]hether Mr. Hertz's original par-

tial plate was repairable; whether the new plate fit properly; whether Hertz actually needed a plate or a set of dentures; [and] whether Hertz's cavity required immediate attention ... are technical questions requiring expert testimony." The court ordered Hertz to file an affidavit by a medical professional disagreeing with Dr. Morrow's expert opinion.

The court further stated that Hertz had not submitted any admissible evidence to refute Beach and Hawkins's affidavits "indicat[ing] that the nurses were not responsible for and did not provide dental treatment to Hertz" and accordingly decided that these claims were "also subject to summary judgment (and no trial) absent further action by Hertz." The court also stated that for his Eighth Amendment claims Hertz needed to "show that his dental needs were 'serious,' that the indifference to his needs was substantial, and that defendants acted with serious disregard to his serious needs." Finding that Hertz had "presented no competent evidence, expert or otherwise, to corroborate his theories," the court gave Hertz "[sixty] days to submit affidavits or other evidence, beyond his unsworn statements," to create an issue of material fact on his claims.

Hertz then submitted his own affidavit and additional medical records. His relevant factual assertions were that: (1) Beach made "two diagnostic decisions concerning [his] dental problems" by giving him pain relief medication for his decayed tooth and by "notify[ing] Dr. Henry Luban, M.D., DOC's medical director in Anchorage ... to get approval to have [Hertz's] tooth ... pulled by Dr. Logan";[2] (2) "Beach and Hawkins were deliberately indifferent towards [his] known dental problems by allowing [him] to wait up to 5–6 months before [he] got to see Defendant Anderson for dental treatment"; and (3) the dental lab was out of commission from June to September 2005, not October to December 2005 as Dr. Anderson claimed. He also submitted a copy of DOC's Medical Advisory Committee's response to his appeal

---

**2.** The document Hertz relied on for this assertion is an authorization for Hertz to see Dr. Logan, signed by Beach on behalf of DOC's Dr. Luban. There is no indication that Beach initiated or requested this referral, or that she faxed this document to Dr. Luban; rather, it appears to have been sent to Dr. Logan, who noted on the document his diagnosis and treatment of Hertz.

(from the denial of his July 26, 2006, grievance), acknowledging that "[a] new treatment plan involving extractions and a full denture has been proposed: You have agreed to this." Hertz argued the response was "expert testimony" showing the defendants' prior negligence.

In September 2007 the superior court granted summary judgment in favor of the defendants, finding Hertz had not remedied the evidentiary deficiencies and thus had failed to create a dispute of material fact for trial. The defendants jointly moved for unallocated attorney's fees in the amount of $10,034.20 under Civil Rule 82(b).[3] Hertz opposed the motion on the ground that he had been the actual prevailing party despite losing on summary judgment because he "received more than he had requested in his relief sought"—a new full denture when he had requested only a properly fitting partial denture. The court rejected Hertz's argument, found the defendants were the prevailing parties, and awarded the defendants the unallocated lump sum attorney's fees requested.

Hertz appeals the superior court's denial of discovery sanctions, grant of summary judgment, and award of attorney's fees.

## III. STANDARD OF REVIEW

■ Whether to impose sanctions on an attorney under Civil Rule 95 is a matter within the discretion of the trial court, and its decision will be reversed only for abuse of that discretion.[4] "We will find an abuse of discretion only where the record as a whole leaves us with a definite and firm conviction that a mistake has been made."[5] Determinations of prevailing party status and entitlement to attorney's fees are also reversed only for abuse of discretion.[6]

■ Grants of summary judgment are reviewed de novo.[7] We "will affirm summary judgment 'if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, all reasonable inferences of fact from the proffered evidence must be drawn against the moving party and in favor of the non-moving party.' "[8]

■ Whether a medical malpractice action requires expert testimony is a question of law to which this court applies its independent judgment, "adopt[ing] the rule of law most convincing in light of precedent, reason, and policy."[9]

## IV. DISCUSSION

### A. Hertz's Motion for Sanctions

Hertz argues that the superior court erred by denying his motion to sanction the defendants' counsel, Paula Jacobson, for conduct during discovery. His motion identified three grounds for sanctions under Civil Rule 95(b):[10] (1) failing to timely comply with the

---

3. Alaska Civil Rule 82(b)(2) provides in pertinent part: "In cases in which the prevailing party recovers no money judgment, the court shall award ... the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred."

4. *In re Schmidt*, 114 P.3d 816, 819 (Alaska 2005) (citing *Keen v. Ruddy*, 784 P.2d 653, 658 (Alaska 1989)).

5. *Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009) (citing *Hopper. v. Hopper*, 171 P.3d 124, 128 (Alaska 2007)).

6. *Id.; Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572, 584–85 (Alaska 2000); *see also Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000, 1002 (Alaska 2006) (citing *Jerue v. Millett*, 66 P.3d 736, 740 (Alaska 2003)) ("Prevailing party determinations will ordinarily be over-

turned only if they are manifestly unreasonable.").

7. *Wilson v. MacDonald*, 168 P.3d 887, 888 (Alaska 2007) (citing *DeNardo v. Bax*, 147 P.3d 672, 676 (Alaska 2006)).

8. *Id.* at 888–89 (quoting *DeNardo*, 147 P.3d at 676–77).

9. *D.P. v. Wrangell Gen. Hosp.*, 5 P.3d 225, 228 (Alaska 2000) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

10. Alaska R. Civ. P. 95(b) provides in pertinent part:

[A] court may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing by the court, if requested, impose a fine not to exceed $50,000.00 against any

order to produce Beach's interrogatory responses; (2) failing to send Hertz a copy of Dr. Anderson's contract with DOC after the court's production order; and (3) issuing false statements denying the existence of certain evidence.

■ The superior court ordered Jacobson to serve properly signed interrogatory responses within twenty days of its December 5, 2006, order. Jacobson provided evidence showing she mailed the interrogatory responses to Hertz on December 19, 2006. The Alaska Rules of Civil Procedure provide that "[s]ervice by mail is complete upon mailing," [11] and Jacobson therefore complied with the court's order. There was no basis for the superior court to sanction Jacobson regarding Beach's interrogatory responses.

■ When the court granted Hertz's motion to compel production of Dr. Anderson's contract with DOC, it did not set a deadline for production. Hertz acknowledged he received the contract sometime before February 6, 2007. The court therefore did not abuse its discretion in refusing to sanction Jacobson for any possible delay in production.

■ Finally, Hertz requested "a copy of Dr. Morrow's recommendation/report concerning Hertz's teeth," and Jacobson responded that "Dr. Morrow did not make any specific 'recommendations' regarding Hertz's teeth. She did, however, make notes in Hertz's medical chart. Those notes have been produced to Hertz." Hertz contended

this statement amounted to a sanctionable lie. The superior court did not abuse its discretion in refusing to impose sanctions for Jacobson's discovery response because no discovery was withheld and Hertz was not misled.

We therefore affirm the superior court's denial of Hertz's motion for sanctions against Jacobson.

### B. Summary Judgment

#### 1. Constitutional claims

■ Hertz alleged the defendants were guilty of "deliberate. indifference" in failing to adequately treat his dental conditions. The superior court noted that Hertz was equivocal about whether his claim rested on the Federal or State Constitution, but construed it as stating violations of the Eighth Amendment of the Federal Constitution. Because Hertz relies on federal authority and because his putative parallel claim for damages under the Alaska constitution would not be viable,[12] we too construe his deliberate indifference claim as arising under 42 U.S.C. § 1983 [13] and the Eighth Amendment.

■ To prove an Eighth Amendment violation stemming from prison medical or dental care, an inmate must prove "deliberate indifference to serious medical needs." [14] The inmate "must show a serious medical need by demonstrating that failure to treat [the] prisoner's condition could result in fur-

---

attorney who practices before it for failure to comply with these rules or any rules promulgated by the supreme court.

11. Alaska R. Civ. P. 5(b).

12. Hertz did assert that the dental treatment he received at Lemon Creek violated article I, section 12 of the Alaska Constitution, which prohibits cruel and unusual punishment. But we will not imply a private cause of action for damages under the Alaska Constitution "except in cases of flagrant constitutional violations where little or no alternative remedies are available." *Lowell v. Hayes,* 117 P.3d 745, 753 (Alaska 2005) (quoting *Dick Fischer Dev. No. 2 v. State, Dep't of Admin.,* 838 P.2d 263, 268 (Alaska 1992) (internal quotation marks omitted) ). Medical malpractice and federal constitutional law provide adequate remedies to redress inadequate dental treatment.

We therefore affirm the implicit dismissal of Hertz's state constitutional claim.

13. 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

14. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that deliberate indifference to prisoners' serious medical needs constitutes violation of Eighth Amendment's prohibition of unnecessary and wanton infliction of pain).

ther significant injury or the unnecessary and wanton infliction of pain." [15] "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." [16]

After demonstrating a serious medical need, the inmate must then show that prison officials were deliberately indifferent to that need, with resulting harm.[17] "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" [18] Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." [19]

Hertz argues the defendants were deliberately indifferent both to his need for a better-fitting partial denture and to the pain caused by a decayed tooth.

### a. Hertz's partial denture

An inmate's need for properly fitting dentures might amount to a serious need when, lacking them, the inmate suffers disfigurement, inability to eat and consequent weight loss, or great pain. In *Hunt v. Dental Department* the Ninth Circuit Court of Appeals held that an inmate stated a claim of deliberate indifference when he alleged that "prison officials were aware of his bleeding gums, breaking teeth and his inability to eat properly, yet failed to take any action to relieve his pain." [20] In *Farrow v. West* the Eleventh Circuit Court of Appeals reversed

summary judgment in favor of a prison dentist after concluding an inmate had demonstrated a serious medical need through "evidence show[ing] pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, weight loss, and such continuing medical problems." [21]

Hertz did not lack dentures, but complained that his upper partial denture fit loosely. He did not produce any evidence that the loose-fitting denture caused him to lose weight, bleed, suffer lacerations, or suffer additional dental damage. In medical requests from May to September 2005, he complained that the denture was bruising the roof of his mouth. In contrast to the conditions described in *Hunt* and *Farrow*, the bruising Hertz describes is not, without more, the kind of "chronic and substantial pain" or injury that implicates the Eighth Amendment.

We affirm the superior court's grant of summary judgment in favor of the defendants on this claim of deliberate indifference.

### b. Hertz's decayed tooth

We also affirm the superior court's grant of summary judgment on Hertz's deliberate indifference claim arising from his tooth: even assuming that Hertz suffered pain from the cavity in his tooth and that the pain was serious enough to implicate the Eighth Amendment, the evidence does not show the defendants were deliberately indifferent to his condition.

For deliberate indifference, "the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

---

15. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc)) (internal quotation marks omitted).

16. *McGuckin*, 974 F.2d at 1059–60.

17. *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

18. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.2004) (quoting *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir.2002)).

19. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988).

20. 865 F.2d 198, 200 (9th Cir.1989).

21. 320 F.3d 1235, 1244–45 (11th Cir.2003).

inference.' "[22] "[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm."[23] When the facts do not demonstrate that the defendants had this knowledge, however, a deliberate indifference claim must fail.[24]

Hertz first complained of the cavity in a medical request dated April 2, 2006, in which he stated the cavity caused him pain when brushing. Dr. Anderson examined the cavity on April 8; he described it as "small and non-acute" and deemed it a "low priority ... requir[ing] only 'routine dental treatment.'" Hertz submitted another request for treatment the next day, complaining that "nothing has been done about my cavity," to which Beach responded that his name had been placed on the dental list. According to a grievance filed by Hertz on July 26, 2006, his tooth began causing him "excruciating pain" on July 8 and the pain subsided with the use of pain relievers by July 16. His medical chart indicates he complained to Beach of pain in his tooth on July 10, and a DOC receipt indicates he received ibuprofen and a topical pain reliever that same day. Hertz was referred to Dr. Logan (an outside dentist) on July 26, and Dr. Logan extracted the tooth on July 27.

The evidence does not establish deliberate indifference by Beach or Hawkins because

there is no indication they knew of but did not respond to Hertz's alleged severe pain. The evidence indicates that Hertz's decayed tooth was not serious when Dr. Anderson examined it on April 8; only when it allegedly began causing him great pain on July 8 did the tooth arguably become a serious condition.[25] But when he complained of the pain to Beach on July 10, Beach immediately notified the doctor on staff (not Dr. Anderson), and Hertz received pain relievers.

Hertz does not assert by affidavit that he told Beach or Hawkins his severe pain continued after July 10, nor does he refer to any other evidence implying that Beach or Hawkins knew that it did. There is thus no evidence that Beach or Hawkins ever denied or delayed treatment. Hertz's medical chart indicates that Hawkins took his blood pressure and heart rate on July 16, but it makes no mention of tooth pain. Hertz himself admits that the pain subsided by July 16. Beach and Hawkins cannot be considered deliberately indifferent when, to the best of their knowledge, medications had relieved Hertz's pain.[26]

There is also no evidence in the record that Anderson knew about the pain Hertz began experiencing on July 8. Had Anderson been aware that Hertz had complained to Beach about pain from his decayed tooth, he would have known only that Hertz had received pain medications and had not com-

22. *Toguchi*, 391 F.3d at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

23. *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir.2003) (citing *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970).

24. *See id.* (reversing grant of summary judgment in favor of certain defendants when evidence showed prisoner alerted them to his diabetic condition and need for food, but affirming summary judgment in favor of other defendants because prisoner "failed to introduce sufficient evidence that [these defendants] knew of [prisoner's] diabetic condition").

25. We assume without deciding that Hertz's painful cavity was a serious need, recognizing that tooth pain may be a serious medical need implicating the Eighth Amendment. *See, e.g., Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir.2004) (noting plaintiff had "presented evi-

dence that he suffered extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating. This constituted a need for medical attention that would have been obvious to a layperson....").

26. *See Reeves v. Caldwell*, No. CIV. 98–363–ST, 1999 WL 375580, at *5 (D.Or. Mar.3, 1999) ("[Defendant] responded promptly to plaintiff's medical/dental requests. She immediately provided pain medication in the form of extra-strength Tylenol, and when it became apparent to her that plaintiff's tooth pain was not alleviated, she scheduled a dental appointment and then changed his medication to a stronger one. The fact that plaintiff complains that the Tylenol he received for 21 days did not sufficiently alleviate his pain, and that [defendant] should have either scheduled the dental appointment or increased his pain medication earlier does not rise to the level of deliberate indifference sufficient to constitute a constitutional violation.").

plained again. Without knowledge that Hertz was suffering from a serious medical need, Anderson could not have been deliberately indifferent.

### 2. Hertz's medical malpractice claims

The superior court granted summary judgment in favor of the defendants on Hertz's medical malpractice claims after concluding that Hertz had failed to supply expert testimony necessary to carry his burden of proof. Hertz argues this conclusion was erroneous for two reasons.

 Hertz first contends that he did produce expert testimony: the DOC Medical Advisory Committee's response to his grievance appeal of August 14, 2006, in which the Committee observed that Hertz's decayed tooth had been extracted by a contract dentist, his upper partial denture fit correctly and needed no further adjustments, and he had been transferred to an Anchorage correctional facility where "[a] new treatment plan involving extractions and a full denture has been proposed." Although Hertz argues this response is expert testimony sufficient to rebut Dr. Morrow's opinion, it is not—it does not describe the standard of care ordinarily exercised by dentists under similar circumstances, nor does it assert that the defendants fell below this standard. Although the Committee acknowledged a new course of treatment for Hertz, that acknowledgment

was not expert opinion that the old course of treatment was negligent.[27] The grievance response does not carry Hertz's burden of proof in his medical malpractice claims.[28]

Hertz next contends that the superior court erred in requiring expert testimony because his claim falls within a narrow exception to the expert testimony requirement: the negligence here is clear enough, he argues, that it is evident to a layperson even without the aid of expert testimony.

 "In medical malpractice actions ... the jury ordinarily may find a breach of a professional duty only on the basis of expert testimony."[29] But we have recognized an exception: "expert testimony is not needed in non-technical situations where negligence is evident to lay people."[30]

In a medical malpractice action by a prisoner against DOC medical personnel, we recently drew a distinction between actions that involve professional judgment or skill and those that do not:

Most of the [plaintiffs'] contentions involved treatment decisions, prescriptions, or other medical issues that are arguably technical; if so, they must be supported by expert evidence. But some of the allegations could possibly fall into the 'non-technical' category, such as the failure to provide medication and adequate access to licensed physicians.[31]

---

27. *See Hutchins v. Blood Servs. of Mont.,* 161 Mont. 359, 506 P.2d 449, 452 (1973) ("Nor does the fact that other physicians might have adopted other methods necessarily render the attending physician liable, nor show negligence or want of skill or care. If the method adopted ... has substantial medical support, it is sufficient." (ellipses in original) (quoting *Dunn v. Beck,* 80 Mont. 414, 260 P. 1047, 1050 (1927)) ); *Lawless v. Calaway,* 24 Cal.2d 81, 147 P.2d 604, 607 (1944) ("[T]he fact that another physician or surgeon might have elected to treat the case differently or use methods other than those employed by defendant does not of itself establish negligence.").

28. *See* AS 09.55.540(a), which places the burden of proof on the plaintiff in a medical malpractice action to show:
(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act

complained of, by health care providers in the field or specialty in which the defendant is practicing;
(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

29. *Clary Ins. Agency v. Doyle,* 620 P.2d 194, 200 (Alaska 1980).

30. *Kendall v. State, Div. of Corr.,* 692 P.2d 953, 955 (Alaska 1984) (citing *Clary Ins. Agency,* 620 P.2d at 200).

31. *Hymes v. DeRamus,* 119 P.3d 963, 968 n. 23 (Alaska 2005).

Whether Hertz's claims require the support of expert testimony depends on whether the actions from which they arise involve specialized medical care, skill, or judgment.

### a. Malpractice claims against Beach and Hawkins

▮ Hertz argues Beach and Hawkins committed malpractice in two ways: in failing to provide him treatment themselves and in delaying his treatment with Dr. Anderson. The superior court granted summary judgment in favor of Beach and Hawkins because Hertz failed to supply expert testimony to support his claims.[32]

Nurses are "health care providers" under the medical malpractice statutes, including the expert testimony requirements of AS 09.55.540.[33] To show that Beach and Hawkins committed malpractice in failing to treat him themselves, Hertz needed to provide expert evidence showing negligence. He did not.

As to his delayed treatment, Hertz does not deny that Hawkins and Beach placed his name on the dental list when he complained of his loose-fitting denture or his decayed tooth. The nurses communicated names and conditions to a dentist, Dr. Anderson, to determine the course and treatment priority for Hertz and other inmates on the list. Hertz acknowledges that Beach alerted a doctor and gave him pain relievers after he informed Beach that his decayed tooth was causing severe pain. Assuming the nurses actually had or exercised the authority to make prioritization recommendations to Dr. Anderson, whether they were negligent in not prioritizing Hertz's dental needs over those of other inmates—a medical judgment—is a question the ordinary layperson cannot answer without expert evidence describing the standard of care required of nurses under the circumstances. Hertz supplied no such evidence.

We therefore affirm the superior court's grant of summary judgment in favor of the nurses on Hertz's medical malpractice claims.

### b. Malpractice claims against Dr. Anderson

Hertz's pleadings suggest four separate malpractice claims against Dr. Anderson: (1) the delay in replacing his partial denture between April 28, 2005, and April 8, 2006; (2) the delay in adjusting his new partial denture between April 8, 2006, and September 12, 2006; (3) the overall approach to treating Hertz's longstanding periodontal disease between April 2005 and September 2006; and (4) the delay in treating the decayed tooth, which was ultimately extracted on July 27, 2006.

▮ The actions underlying the latter three claims of malpractice all required expert evidence. Dr. Anderson gave Hertz his new partial denture and adjusted it on April 8, 2006. Although Hertz complained the new partial denture was loose, both Dr. Logan, who examined Hertz in July 2006, and Dr. Morrow, who examined him in September 2006, believed that the denture was properly fitted and "there were no adjustments that would improve its function." Whether the partial denture needed to be adjusted and whether Dr. Anderson's failure to do so was negligent are questions of medical judgment that a layperson is ill-equipped to evaluate. To avoid summary judgment Hertz needed to produce expert opinion evidence disputing Dr. Morrow's opinion that Dr. Anderson met the standard of care; when Hertz did not, it was not error to grant summary judgment in Dr. Anderson's favor.

Hertz's theory that Dr. Anderson's overall approach to treating Hertz's periodontal disease—replacing and adjusting the partial denture as necessary—was negligent also required supporting expert evidence. The proper course of treatment for periodontal disease is a matter of professional judgment;

---

**32.** The superior court also ruled that Hertz had not contested Beach and Hawkins's affidavits indicating that they "were not responsible for and did not provide dental treatment to Hertz," and granted summary judgment in favor of Beach and Hawkins on that ground as well. Because we conclude Hertz was required to pro-

duce expert testimony in support of claims against the two nurses, we need not reach this ground of the court's decision.

**33.** AS 09.55.560(2).

laypeople are not ordinarily equipped with the knowledge to second-guess a dentist's approach. Hertz suggests that the more aggressive treatment ultimately proposed by Drs. Logan and Morrow—extracting Hertz's remaining teeth and constructing a full denture—implies Dr. Anderson's approach was inadequate. That these dentists opted for one approach, however, does not establish that Dr. Anderson's approach fell below the standard of care required of dentists under the circumstances.[34] More than one approach may meet the applicable standard of care; without testimony describing that standard, the ordinary layperson would not know whether Dr. Anderson's approach fell below it. When Hertz failed to produce expert evidence to support this claim, it was not error to grant summary judgment in Dr. Anderson's favor.

Finally, Hertz's claim that the treatment of his decayed tooth amounted to malpractice also required supporting expert evidence to survive summary judgment. Dr. Anderson first examined the decay on April 8, 2006. He described the cavity as "small and non-acute," and "in [his] professional and clinical judgment, the cavity was not an urgent matter nor did it take priority over other inmates with more acute and urgent dental needs." Dr. Anderson's April 8 diagnosis, his decision to postpone treatment, and his decision to prioritize other inmates' needs all involved the exercise of medical judgment and skill; Hertz needed expert evidence to show those decisions were negligent. When Hertz failed to produce expert evidence, it was not error to grant summary judgment in Dr. Anderson's favor.

 When all inferences are drawn in Hertz's favor the delay of almost a year in replacing his upper partial denture may not have been due entirely to the exercise of Dr. Anderson's professional judgment. Hertz began requesting a new denture in April 2005 after two of his teeth had been extracted. Dr. Anderson made an impression of Hertz's teeth on September 17, 2005, and sent it to the laboratory. Dr. Anderson stated that he was unable to treat inmates from mid-October 2005 to mid-December 2005 because the Lemon Creek dental facility was "out of commission" at that time. He then explained that, due to the resulting backlog of inmates with more urgent dental needs, he was unable to see Hertz until February 11, 2006. Although there is nothing in the record to indicate whether Dr. Anderson had a new upper partial denture ready to install that day, Hertz's teeth had shifted during the interim, so Dr. Anderson made a new impression. Dr. Anderson delivered the new upper partial denture to Hertz on April 8, 2006.

Hertz asserts that the Lemon Creek dental facility was not out of commission in the fall of 2005, but rather from June to September 2005, before his impression was taken. If true, this statement calls into doubt Dr. Anderson's assertion that his failure to treat Hertz between September 2005 and February 2006 was due to closure of the facility and to his subsequent professional judgment about whom to treat first. Without knowing whether the months-long wait resulted from the lack of an appropriate facility or appropriate staffing, from Dr. Anderson's professional judgment regarding Hertz's needs relative to those of other inmates, or from some other factor, we cannot determine whether expert evidence is necessary to evaluate Dr. Anderson's actions. On the current record, it was error to grant summary judgment for lack of expert evidence on this particular malpractice claim.[35]

We affirm the grant of summary judgment on Hertz's malpractice claims against Dr. Anderson, except for the claim arising from the year-long delay in replacing his denture. We remand that claim to the superior court for further proceedings.

### C. Attorney's Fees

The superior court granted the defendants' joint motion for attorney's fees after finding

34. See Hutchins, 506 P.2d at 452; Lawless, 147 P.2d at 607.

35. We observe that inordinate delays in dental treatment due to inoperative facilities or insufficient staff to handle the volume of prisoner needs may implicate DOC's duties to prisoners. Because Hertz did not raise this issue, and actually removed DOC from his lawsuit by way of his amended complaint, we need not address it.

that the defendants were the prevailing parties and that their attorney's fees were reasonable and necessarily incurred. The award did not specify the amount of attorney's fees incurred on behalf of each individual defendant. In light of our rulings, the judgment against Hertz for attorney's fees must be vacated.

Because we reverse one part of the summary judgment ruling in favor of Dr. Anderson and remand for further proceedings, Dr. Anderson is not a prevailing party and is not entitled to an attorney's fees award.

Because we affirm the superior court's grant of summary judgment in favor of Beach and Hawkins, we also affirm its determination that they were prevailing parties entitled to an attorney's fee award.[36] But Beach and Hawkins may not be awarded attorney's fees incurred in Dr. Anderson's defense or in defending against Hertz's deliberate indifference claims unless the court finds that his action was "frivolous, unreasonable, or without foundation." [37] We therefore remand for further proceedings on the attor-

ney's fees award in favor of Beach and Hawkins.

## V. CONCLUSION

We AFFIRM the superior court's denial of sanctions against the defendants' counsel. We AFFIRM the superior court's grant of summary judgment in favor of Beach and Hawkins. We AFFIRM the superior court's grant of summary judgment in favor of Dr. Anderson on all claims except Hertz's medical malpractice claim arising from the delay in replacing his upper partial denture, and we REVERSE the grant of summary judgment on that claim and REMAND for further proceedings consistent with this decision. We VACATE the judgment against Hertz for attorney's fees and REMAND for entry of a new attorney's fees award in favor of Beach and Hawkins.

---

**36.** Hertz argues that the superior court erred in deciding the defendants were prevailing parties because he "received more than he requested, a full set of dentures." "Prevailing party status does not automatically follow [from] ... an affirmative recovery but rather ... is based upon which party prevails on the main issues." *Hutchins v. Schwartz*, 724 P.2d 1194, 1204 (Alaska 1986). "To decide which party prevails, the court must 'determine, in an overall sense, which party the decision favors.'" *Gwich'in Steering Comm.*, 10 P.3d at 584 (quoting *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976, 981 (Alaska 1997)). The main issues in this case were whether the defendants were negligent or deliberately indifferent regarding Hertz's dental care. As discussed above, Hertz's eventual receipt of a full

denture does not prove that they were negligent or deliberately indifferent (nor was it provided in exchange for dismissal of his claims). The superior court's decision granted summary judgment in favor of Beach and Hawkins on all claims. The decision therefore favored Beach and Hawkins, and it was not an abuse of discretion to determine they were the prevailing parties.

**37.** *DeNardo v. Mun. of Anchorage*, 775 P.2d 515, 518 (Alaska 1989) (quoting *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)) (internal quotation marks omitted) (reversing award of attorney's fees to city government when trial court remarked that plaintiff's claim under § 1983 "appeared to have merit").