NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STUART SEUGASALA,<br><br>               Appellant,<br><br>v.<br><br>STATE OF ALASKA, DEPARTMENT<br>OF CORRECTIONS; DIRECTOR<br>BRYAN BRANDENBURG, in an official<br>capacity; and CHARLES STEWART, in<br>an official capacity,<br><br>               Appellees. | Supreme Court No. S-17536<br><br>Superior Court No. 3AN-17-07024 CI<br><br>MEMORANDUM OPINION<br>AND JUDGMENT[*]<br><br>No. 1858 – November 17, 2021 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Stuart Seugasala, pro se, Tucson, Arizona, Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellees.

Before: Bolger, Chief Justice, Maassen and Carney, Justices. [Winfree and Borghesan, Justices, not participating.]

## I. INTRODUCTION

A federal detainee was incarcerated in an Alaska Department of Corrections (DOC) facility while awaiting trial. In response to a request from the United States

---

[*]     Entered under Alaska Appellate Rule 214.

Marshals — based on allegations that the detainee had a history of violence and had threatened other inmates — DOC officials placed him in administrative segregation. DOC officials reviewed his status approximately every 30 days, but he ultimately spent nearly two years in administrative segregation.

The detainee brought a damages suit against DOC and two of its officials based on alleged violations of his constitutional rights. The superior court granted summary judgment to DOC, deciding that the complaint was barred by the statute of limitations and, alternatively, that a direct damages claim lacked support in either the Alaska Constitution or 42 U.S.C. § 1983. Because we agree that the detainee's claims are time-barred and are otherwise not viable, we affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Background

Stuart Seugasala was arrested in June 2013 for violating the conditions of his supervised release following a federal drug conviction. He was incarcerated at the Anchorage Correctional Complex (ACC), a State facility operated by DOC, pursuant to a contract between the State and the federal government. Initially he was housed in the general population.

In August 2013 Seugasala was indicted on new federal charges. A grand jury found probable cause to believe that he and several accomplices had kidnaped two men at gunpoint, beat them, then filmed Seugasala sexually assaulting one of the victims with a curling iron, intending to use the film as a message to others who failed to pay their drug debts.

The U.S. Marshals followed up the indictment with a field report to DOC. The report notified DOC that Seugasala had allegedly "forcibly sodomized persons with

foreign objects causing great bodily harm" and that he was "openly expressing his desire to sexually accost Native inmates" at ACC. "In order to maintain the safety and well being of other inmates, the U.S. Marshals . . . respectfully request[ed] that [DOC] place [Seugasala] in [administrative] segregation . . . until further notice." DOC moved Seugasala to administrative segregation the next day.

## 2. Prison policy

Rules for administrative segregation are set by DOC Policies and Procedures No. 804.01. The stated purpose of administrative segregation is to "securely house inmates who require special supervision"; it is not to be used "as punishment."[1] Inmates may be placed in administrative segregation for any of a number of reasons. Pertinent to Seugasala's case are categories eight (the inmate "presents a substantial and immediate threat to the security of the facility or public safety") and nine (the inmate "requires protective custody").[2]

After being placed in administrative segregation, an inmate is given a hearing at which he may challenge the factual basis for the placement.[3] Thereafter, an institutional probation officer must hold review hearings every 30 days for as long as the inmate remains in administrative segregation;[4] at each hearing DOC must "demonstrate

---

[1] STATE OF ALASKA, DEP'T OF CORR., POLICIES AND PROCEDURES 804.01(VI) (2014), https://doc.alaska.gov/pnp/pdf/804.01.pdf (outlining policy).

[2] DOC POLICIES AND PROCEDURES 804.01(VII)(A)(8)-(9).

[3] 22 Alaska Administrative Code (AAC) 05.485(d)-(e) (2020); DOC POLICIES AND PROCEDURES 804.01(VII)(C)(2).

[4] 22 AAC 05.485(d).

[that] the inmate continues to meet the criteria for segregation."[5] The officer must document each hearing by preparing a form for the superintendent's review, including written factual findings and identification of the evidence the officer relied on in reaching a decision.[6] The superintendent may approve, disapprove, or modify the hearing officer's decision.[7] Additionally, the superintendent may authorize a placement review hearing at any time outside of the regular schedule.[8] The inmate has five days following his receipt of any review decision to appeal it to the Director of Institutions.[9]

Inmates in administrative segregation "must be afforded rights and privileges . . . consistent with the security risks inherent in the reasons and justification [for the segregation]."[10] Individualized determinations of safety risks must be made before the inmate's access to visitation, mail, recreation, libraries, and other programs and activities may be restricted.[11] These individualized determinations must include written findings of fact.[12] They are reviewed every 30 days and are also appealable,

---

[5] DOC POLICIES AND PROCEDURES 804.01(VII)(D).

[6] 22 AAC 05.485(e).

[7] 22 AAC 05.495(b); DOC POLICIES AND PROCEDURES 804.01(VII)(C)(5).

[8] DOC POLICIES AND PROCEDURES 804.01(VII)(D).

[9] *Id.*

[10] 22 AAC 05.500.

[11] DOC POLICIES AND PROCEDURES 804.01(VII)(F)(1).

[12] *See* 22 AAC 05.485(e); DOC POLICIES AND PROCEDURES 804.01(VII)(F)(2).

presumably to the Director of Institutions.[13]

### 3. Administrative segregation

Probation Officer Charles Stewart conducted Seugasala's initial segregation hearing on August 29, 2013. Seugasala argued that he had not been told the reason for his segregation and that there was no justification for it. But Stewart recommended continued segregation, stating as the reason that Seugasala "[r]equires protective custody" and citing the Marshals' request that he remain segregated from other inmates. Stewart's recommendation also included restrictions on Seugasala's access to communal meals, the law library, and programs outside his cell, including group religious activity. Seugasala's visitation was restricted to secured visits only. The superintendent approved the recommendation.

Stewart conducted another review hearing approximately every 30 days thereafter. Each time, Stewart recommended continued administrative segregation for the same reasons with the same restrictions, and each time the superintendent approved the recommendation. Seugasala attended only four of the hearings; he argued each time that there was no factual basis for his segregation and that the hearing's outcome was predetermined. The parties now dispute whether he was prevented from attending the other hearings or simply chose not to attend.

Although not all hearings were recorded, the June 19, 2014 hearing was. Seugasala accused Stewart of prejudging the hearing's outcome by using forms that had already been filled out before the hearing began. Stewart admitted that he was using a form with pre-checked boxes; also, according to the transcript, the pre-filled form stated

---

[13] The governing rule, 804.01(VII)(F)(2), provides that these determinations are appealable "as provided in Section D above." Section D does not mention appeals; Section E does and provides for appeals to the Director of Institutions. *See* 22 AAC 05.485(e); DOC POLICIES AND PROCEDURES 804.01(VII)(F)(2).

falsely that Seugasala had waived his statement "prior to [the] hearing." But Stewart disputed that the form dictated the hearing's result, asserting that nothing was final until the form was signed. On the other hand, Stewart insisted that DOC was powerless to change Seugasala's status as long as the U.S. Marshals' recommendation was unchanged: "This is pretty well set[,] there's nothing that anybody can do about this until the feds change their mind."

Apparently in early 2014, in the course of the criminal case pending in U.S. District Court, Seugasala filed a motion asking for a review of the conditions of his detention. The only documentation of this proceeding in our record is the U.S Attorney's opposition to the motion; we assume the motion was denied.

Seugasala ultimately appealed the superintendent's review decisions three times. The last two, in June and October 2014, were reviewed and denied by Director of Institutions Bryan Brandenburg in July and November, respectively. In each appeal Seugasala was either given no reason for the denial or told there was nothing that could be done due to his status as a federal inmate. Denying the last appeal, Brandenburg wrote: "You are a federal inmate, they request you be segregated. End of story. Your appeal is denied."

In February 2015 Seugasala filed a complaint with the State Ombudsman, alleging that his segregation lacked any legal basis. The ombudsman issued a preliminary report in April 2015, concluding that Seugasala's complaint was justified and "disturbing." She wrote that "DOC had no intention of providing [Seugasala] with a fair and impartial hearing" and that the review hearings it did hold "were nothing more than a charade"; she recommended that DOC provide Seugasala a "review hearing that comports with DOC policy and provides sufficient due process." DOC did not respond to the ombudsman's preliminary report, and the preliminary findings and recommendations became final in August 2015. By that point, however, Seugasala was

no longer at ACC.[14]  Stewart had presided over Seugasala's last 30-day review hearing on May 14, 2015, and a month later Seugasala had been moved out of administrative segregation and into federal custody.

## B.    Proceedings

Seugasala submitted a signed pro se complaint to prison officials on May 31, 2017, and it was filed in Anchorage Superior Court the next day.  Seugasala alleged that DOC, Stewart, and Brandenburg had violated his due process rights under the Alaska Constitution, the general "right to due process," and Alaska statutes and regulations by housing him in administrative segregation without just cause or adequate process.  He sought $2 million in punitive damages and as compensation for his alleged mental injury and loss of freedom.

The defendants moved for summary judgment.  Seugasala did not file an opposition,[15] and the court granted the defendants' motion.   The court interpreted Seugasala's pro se complaint liberally to include claims under both 42 U.S.C. § 1983[16]

---

[14]    Because Seugasala was no longer in DOC custody, the ombudsman broadened her recommendation in the final report:  "DOC should immediately stop its practice of deferring to U.S. Marshals' requests to house federal inmates in solitary confinement" and "immediately hold an administrative segregation classification hearing . . . that comports with the basic tenets of due process" for any DOC inmates currently held in solitary confinement at the Marshals' request.

[15]    Seugasala claims he was "locked down awaiting transfer" at the time an opposition was due and points out that he did file a motion for reconsideration following the court's summary judgment order.

[16]    42 U.S.C. § 1983 (2018) provides:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in

(continued...)

and the Alaska Constitution[17] against DOC and the two named officers, in both their official and personal capacities. The court concluded first that all the claims were barred by Alaska's two-year statute of limitations for personal injury claims.[18] The court also identified alternative bases for summary judgment. It concluded that the Alaska Constitution does not provide a direct damages cause of action if there are alternative remedies, and that § 1983 provides such an alternative. It also found, however, that neither DOC nor the named officers, acting in their official capacities, were "persons" under § 1983, meaning they could not be sued under that statute. And last, the court decided that Seugasala's confinement in administrative segregation did not implicate a liberty interest for purposes of supporting a § 1983 claim, because although pretrial detainees have a liberty interest in not being punished while awaiting trial, there was no evidence in this case that DOC was using administrative segregation as punishment rather than for a legitimate administrative purpose such as institutional safety.

Seugasala appeals.

## III.   STANDARD OF REVIEW

"We review grants of summary judgment de novo."[19] Summary judgment is proper if, "[a]fter the court makes reasonable inferences from the evidence in favor of

---

[16]    (...continued)
an action at law, suit in equity, or other proper proceeding for redress . . . ."

[17]    Seugasala cited article I, section 7 (Due Process) (protecting person's life, liberty, or property interests from deprivation without due process and ensuring fair and just treatment in investigations) and section 12 (Criminal Administration) (prohibiting cruel and unusual punishment and stating proper bases for criminal administration).

[18]    AS 09.10.070.

[19]    *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

the non-moving party,"[20] "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[21] "Issues of constitutional interpretation are also reviewed de novo."[22] "We use our independent judgment in reviewing the application of a statute of limitations, which is a matter of law."[23]

## IV. DISCUSSION

Because Seugasala is self-represented, we, like the superior court, read his complaint liberally to include claims under both the Alaska Constitution and 42 U.S.C. § 1983 against the DOC and the individual defendants in both their individual and official capacities.[24] As to each claim, and each defendant, we agree with the superior court's conclusion that no relief is available.

### A. The Superior Court Did Not Err In Dismissing The Claims Under The Alaska Constitution Because Seugasala Had Other Available Remedies.

We have never expressly adopted or rejected a direct damages claim — akin to a *Bivens* claim — for violations of the Alaska Constitution.[25] But we "will not allow a claim for damages except in cases of flagrant constitutional violations

---

[20] *Id.* at 520.

[21] *Id.* at 516 (quoting Alaska R. Civ. P. 56(c)).

[22] *Forrer v. State*, 471 P.3d 569, 583 (Alaska 2020).

[23] *Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 883 (Alaska 2006).

[24] *See Toliver v. Alaska State Comm'n for Hum. Rts.*, 279 P.3d 619, 622 (Alaska 2012) ("[W]e consider pro se pleadings liberally in an effort to determine what legal claims have been raised."); *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 800 n.5 (Alaska 2011) ("Like most courts, we do not require litigants to specify that they are suing under § 1983" if such a claim can be inferred from the claims made.).

[25] *See Thoma v. Hickel*, 947 P.2d 816, 824 n.5 (Alaska 1997) (citing *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).

where little or no alternative remedies are available."[26]  The fact that a claim seeking the alternative remedy was time-barred, dismissed, or unavailable for other procedural reasons does not make it unavailable for purposes of this rule.[27]  And the alternative relief need not be a perfect analogue to a constitutional claim; the availability of "*some* type of relief" bars a direct claim for damages based on the Alaska Constitution.[28]

In his complaint, Seugasala cited the United States and Alaska constitutions; a statute setting out the duties of the DOC commissioner;[29] a regulation addressing the provision of medical services to prisoners;[30] and a 1974 opinion of the United States Supreme Court.  *Wolff v. McDonnell* was a § 1983 case in which the Court decided that due process requires prison disciplinary proceedings to include at least written notice of the charges, a written statement of the evidence on which the charges were based, and an opportunity for the prisoner to present evidence in his defense.[31]  As indicated by *Wolff* and its progeny, § 1983 is a common basis for claims challenging

---

[26]     *Dick Fischer Dev. No. 2, Inc. v. State, Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992).

[27]     *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 175 (Alaska 2010) ("[T]he procedural procedural unavailability of alternative remedies does not negate the existence of those remedies."); *Lowell v. Hayes*, 117 P.3d 745, 754 (Alaska 2005) ("Surely the inadequacy of alternative remedies for alleged constitutional violations cannot be measured per se by the dismissal or defeat of those remedies. . . . [T]he perverse result would be that the more frivolous or unjustifiable a claim, the more it would merit an implied constitutional cause of action for damages.").

[28]     *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1097 (Alaska 2012) (emphasis in original).

[29]     AS 33.30.011.

[30]     22 AAC 05.120(b).

[31]     418 U.S. 539, 564-65 (1974).

prison conditions and prison disciplinary procedures.[32] But regardless of whether § 1983 gave Seugasala a possible avenue of relief, he had a more obvious alternative in the form of an administrative appeal.[33] Administrative segregation is a classification decision that implicates a constitutional right; the DOC decisions were therefore subject to judicial review if timely appealed.[34] The availability of that right means that a constitution-based claim for damages is precluded.

**B.    The Superior Court Did Not Err In Dismissing Seugasala's § 1983 Claims Against The DOC Officials As Barred By The Statute Of Limitations.**

The superior court dismissed all of Seugasala's damages claims as untimely. We consider first the court's ruling as it relates to the two DOC officials and conclude that it was correct.

---

[32]    *See, e.g.*, *DeRemer v. Turnbull*, 453 P.3d 193, 196 (Alaska 2019) (involving prisoner's § 1983 claim asserting violations of constitutional rights arising out of disciplinary proceedings); *Wright v. Anding*, 390 P.3d 1162, 1167 (Alaska 2017) (involving prisoner's medical malpractice claims and claims of deliberate indifference to his medical needs under § 1983); *Hertz v. Beach*, 211 P.3d 668, 677 (Alaska 2009) (involving prisoner's § 1983 claim challenging level of dental care provided in prison).

[33]    *Brandon v. State, Dep't of Corr.*, 938 P.2d 1029, 1033 (Alaska 1997) (holding that the superior court has jurisdiction to hear administrative appeals from prisoner classification decisions).

[34]    *Id.* An alternative remedy need not include the possibility of money damages in order for it to foreclose a *Bivens*-type action for constitutional violations. *See, e.g.*, *Herrick's Aero-Auto-Aqua Repair Serv. v. State, Dep't of Transp. & Pub. Facilities*, 754 P.2d 1111, 1116 (Alaska 1988) (holding that availability of injunctive relief in lease dispute foreclosed *Bivens*-type remedy); *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123-24 (9th Cir. 2009) (deciding that Administrative Procedures Act provided sufficient process "notwithstanding the unavailability of money damages against individual officers or the right to a jury trial" and observing that "the case law of the Supreme Court and this court makes clear that a remedial scheme may be adequate even if it does not include" such rights and remedies).

"The limitations period for a § 1983 claim is prescribed by the state statute of limitations for a personal injury action."[35] In Alaska this period is two years.[36] A self-represented prisoner's complaint is deemed filed when it is delivered to prison officials for transmittal to court.[37] Seugasala signed and submitted his complaint to DOC officials for filing on May 31, 2017. In order to be considered timely, therefore, Seugasala's claims must have accrued no earlier than May 31, 2015, two years before. Seugasala argues that his claims are timely because they accrued on June 10, 2015, the day he was released from administrative segregation. But the superior court reasoned that Seugasala's complaint was about inadequate process; the court therefore deemed the latest possible accrual date to be the day of the final 30-day review, the last act of inadequate process. Because this final review happened on May 14, 2015, the superior court concluded that the § 1983 claims were all untimely.

Federal law determines when a § 1983 claim accrues.[38] It generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."[39] There is no vicarious liability for violations of the U.S. Constitution.[40] Rather, "a plaintiff must plead that each Government-official defendant, through the official's

---

[35]    *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1249 (Alaska 2001).

[36]    *Id.* at 1249. AS 09.10.070 sets the statute of limitations for personal injury claims in Alaska.

[37]    *See Houston v. Lack,* 487 U.S. 266, 275-76 (1988).

[38]    *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

[39]    *Id.* (quoting *TwoRivers v. Lewis,* 174 F.3d 987, 992 (9th Cir. 1999)).

[40]    *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Prentzel v. State, Dep't of Pub. Safety*, 53 P.3d 587, 595-96 (Alaska 2002).

own individual actions, has violated the Constitution."[41] "An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.' "[42]

Brandenburg's last personal involvement in Seugasala's case was his November 14, 2014 denial of Seugasala's appeal from the October review hearing. Seugasala does not dispute that Brandenburg left DOC in December 2014; Brandenberg cannot be held liable for any claims based on conduct after that date. As for Stewart, his last personal involvement in Seugasala's case was his 30-day review on May 14, 2015. Under DOC policies, a superintendent may authorize a hearing other than the periodic 30-day reviews; Stewart, a probation officer, lacked the authority to affect Seugasala's status between May 14 and his release on June 10.[43] Because no "culpable action, or inaction," may be "directly attributed to" Stewart or Brandenberg during the two years preceding the filing of Seugasala's complaint, the court properly relied on the statute of limitations to dismiss the § 1983 claims against them.

## C. The Superior Court Did Not Err In Dismissing Seugasala's § 1983 Claims Against DOC.

This leaves only Seugasala's § 1983 claim against DOC.[44] We assume for

---

[41] *Iqbal*, 556 U.S. at 676.

[42] *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).

[43] Seugasala asserts that Stewart "could have held a review hearing and returned [him] to general population on any day he chose" under authority delegated to him by the superintendent, but he provides no factual or legal support for this assertion.

[44] Seugasala's complaint sought money damages and possibly declaratory relief. He argues for the first time in his reply brief that his suit may also involve injunctive relief against DOC, though he also acknowledges that he is now in federal custody. Suits for an injunction may be brought against a state or its officers. *Papasan v. Allain*, 478 U.S. 265, 278 (1986). But even when construed liberally in light of
(continued...)

purposes of argument that the challenged conduct of DOC, as opposed to that of its individual officers, continued until Seugasala's release from administrative segregation and transfer to federal custody on or about June 10, 2015, within the two-year limitations period. But DOC nonetheless could not be held liable for Seugasala's damages claims. Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by a "person" acting under color of state law.[45] It is well established that neither a state, nor its agencies, nor its officials acting in their official capacities are "persons" for purposes of § 1983.[46] Seugasala's claim against DOC is therefore precluded.

## V. CONCLUSION

The superior court's grant of summary judgment is AFFIRMED.

---

[44] (...continued)
Seugasala's self-represented status, this point is too cursorily briefed and is raised too late for us to consider it. *Lewis v. State, Dep't of Corr.*, 139 P.3d 1266, 1272 (Alaska 2006) ("We do not consider arguments raised for the first time in a reply brief.").

[45] 42 U.S.C. § 1983.

[46] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004).