*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SEAN WRIGHT, | ) | |
| | ) | Supreme Court No. S-15959 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-08114 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TAMATHA K. ANDING, HSA, | ) | |
| REBECCA BINGHAM, M.D., and | ) | No. 7160 – March 17, 2017 |
| GEO GROUP, INC., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Sean Wright, pro se, Anchorage, Appellant. Aisha Tinker Bray, Assistant Attorney General, Fairbanks, Craig W. Richards, Attorney General, Juneau, and Aaron D. Sperbeck, Birch Horton Bittner & Cherot, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices. [Winfree, Justice, not participating.]

STOWERS, Chief Justice.

## I. INTRODUCTION

A former inmate of the Alaska Department of Corrections (DOC), who was incarcerated at an out-of-state correctional facility under contract with DOC, filed a medical malpractice and 42 U.S.C. § 1983 civil rights action against officials employed

by the out-of-state correctional facility and by DOC. The civil rights claims alleged that the corrections officials were deliberately indifferent to the inmate's medical needs.

The superior court granted summary judgment dismissing the medical malpractice action as barred by the two-year statute of limitations. Subsequently the court granted summary judgment on the deliberate indifference claims against the inmate. In the course of the proceedings, the inmate also sought, unsuccessfully, to have the superior court judge removed for alleged bias. The inmate appeals these decisions. We affirm.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Sean Wright, an inmate in DOC's custody, was transferred to the Hudson Correctional Facility in Hudson, Colorado in 2009.[1]  GEO Group, Inc. (GEO Group) operated the Hudson Correctional Facility. In 2013 DOC transferred Wright to the Wildwood Correctional Center in Kenai.

In 2009 Wright began complaining of "loss of hearing" and an "ear infection." Medical staff at the Hudson Correctional Facility promptly addressed his complaints, treating earwax buildup by irrigating his ears. However, in May and October 2010 Wright again complained about hearing loss. After his complaints to Hudson staff were not addressed to his satisfaction, Wright filed a medical grievance on November 4, 2010 with DOC complaining of "severe hearing loss." DOC denied the grievance because it "raise[d] unrelated issues that should be presented in separate

---

[1]    DOC contracted with a private correctional corporation to house Alaskan inmates due to lack of space in Alaskan correctional institutions. Depending on certain criteria such as length of sentence and relative dangerousness of an inmate, DOC assigned some inmates to serve their sentences, or a portion of their sentences, in privately operated facilities outside of Alaska. DOC retained oversight of the contractor to ensure that it adhered to DOC's basic standards.

grievances." Wright re-filed his grievance on November 9, complaining of "severe hearing loss," stating that his hearing loss from his previous job operating heavy equipment required him to have hearing aids, alleging that the Hudson Correctional Facility had denied him medical care, and requesting "hearing aids or aid to assist [him] in hearing correctly." On November 17 Wright filed another similar grievance because he had not yet received a reply to his November 9 grievance.

Tamatha K. Anding, GEO Group's Health Services Administrator at the Hudson Correctional Facility, denied Wright's November 9 grievance on November 18 because he had not followed proper procedure; she stated that because he had not filed a formal request for medical care related to hearing loss within the previous three to four months, Wright could not have been denied medical care related to that issue. Anding responded to Wright's November 17 grievance on November 23. She denied this grievance, noting that medical staff had seen Wright eleven times in the past eleven months, that no one had to raise their voices to speak with him, and that he had no trouble responding to nurses in the noisy dining hall.

Wright appealed the denial of his grievances to the DOC's Medical Advisory Committee. The Committee is a panel made up of DOC healthcare staff and collaborating consulting physicians appointed by the DOC Commissioner.[2] The Committee makes decisions regarding requests for referrals of inmates to health care services outside DOC facilities and regarding inmate healthcare grievance appeals.[3] The Committee denied Wright's appeal, noting that numerous healthcare providers had seen

---

[2]     *See* State of Alaska Dep't of Corr. Policies & Procedures 807.01, Procedures § IV.D, http://www.correct.state.ak.us/pnp/pdf/807.01.pdf.

[3]     *Id.* § IV.B.

Wright and that none had made note of any significant issues related to hearing loss or difficulties with communication.

In January 2011 Wright again saw Hudson medical staff after complaining of hearing loss. Medical staff removed a large plug of earwax during the visit. The next month, Wright again requested treatment for hearing loss. Hudson medical staff saw Wright and referred him to an ear, nose, and throat specialist (ENT) to investigate his complaints and discuss treatment for tinnitus.[4] The Committee approved this referral. In May Wright visited Denver Health's Audiology Department, where he underwent an audiological evaluation performed by a doctor of audiology. The audiologist's examination concluded that Wright had "normal middle ear function bilaterally," and the audiologist did not recommend hearing aids. Despite these test results and the lack of any medical recommendation for hearing aids, Wright continued to demand hearing aids.

In May 2012 Wright filed an action against GEO Group, Anding, Warden Joe Driver, and DOC under 42 U.S.C. §1983[5] in the U.S. District Court for the District of Colorado. Wright alleged that the defendants failed to provide medical care for an ear infection and hearing loss. In November 2012 the district court dismissed the federal

---

[4]     Tinnitus "is the perception of noise or ringing in the ears. . . . Tinnitus isn't a condition itself — it's a symptom of an underlying condition." *See Tinnitus*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/tinnitus/home/ovc-20180349 (last visited Feb. 21, 2017).

[5]     42 U.S.C. § 1983 (2012) ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").

action under 28 U.S.C. § 1915(e)(2)(B)[6] as frivolous. Wright appealed this decision, but the Tenth Circuit Court of Appeals concluded that he filed his appeal too late.

In February and March 2013 Wright continued to complain about hearing loss. Prison medical staff saw Wright on February 5 and 6 and removed impacted earwax. On March 26 medical staff saw Wright again and referred him for an "Audiology/ENT consult." The Committee again approved this referral. Denver Health performed another audiological evaluation on May 14, and the evaluation noted that there was "no significant change from [the] previous audio[logical evaluation] on 5/25/11" and that Wright's "speech discrimination at normal conversational levels [was] excellent." The audiologist did not recommend or prescribe hearing aids. After the examination Wright again complained about his hearing loss.

The day after Wright's examination by the audiologist, Correctional Officer P. Christensen filed an incident report against Wright for "malingering or feigning an illness" based on the audiologist's report that Wright's hearing had not worsened. Officer Christensen noted that the "Doctor of the Audio Department said . . . Wright's hearing was good and he had over ninety percent hearing in his right ear and over eighty percent in his left ear," and Officer Christensen stated that he then "informed . . . Wright [that] he could be considered a security threat and he could be placed in Segregation for [malingering or feigning an illness] if his [loss of hearing] test [came] back negative." Hudson Correctional Facility denied Wright's requests for further evaluation of his alleged hearing loss based on his recent audiological evaluation.

Wright was transferred to Wildwood Correctional Center in Kenai later in 2013. In early 2014 Wright began complaining again about "[s]evere hearing loss"; he

---

[6]     28 U.S.C. § 1915(e)(2)(B)(i) (2012) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious . . . .").

insisted that he needed hearing aids. Wildwood Correctional Center medical staff saw Wright multiple times in February and March and then submitted a request to refer Wright to an ENT. Later that month, the Committee approved Wright's referral to Dr. Jerome O. List, an ENT in Anchorage. Dr. List saw Wright on April 7 and recommended a Pocket Talker[7] to improve amplification for Wright. However, Dr. List did not recommend hearing aids. The Committee approved the Pocket Talker for Wright, and DOC obtained the device for Wright's use. Wright received the Pocket Talker on May 1.

The next day, Wright submitted a written "Request for Interview," complaining that the Pocket Talker was only helpful when talking one-on-one, stating that it would be dangerous to use the device at his job after release from incarceration, and insisting that he needed hearing aids. Wright filed another medical grievance on June 26 requesting a "hearing aid or surgery" to correct his hearing loss. DOC denied this request on June 30 because Wright had the "device recommended by [Dr. List]." Wright appealed the denial to the Committee on July 1, demanded hearing aids, and claimed that the Pocket Talker would not help him at all once he was released. On July 13 the Committee answered Wright's appeal, saying he had "relief granted in the form of recommended amplification," the Pocket Talker.

---

[7]     A Pocket Talker is a "single-unit amplifier . . . designed for close listening situations, because the hearing impaired person and the desired sound source are tethered by cords."

### B. Proceedings

On June 7 Wright filed his initial complaint[8] in the superior court suing GEO Group, Anding, and Dr. Rebecca Bingham.[9] Wright asserted medical malpractice claims and claims of deliberate indifference to his medical needs under 42 U.S.C. § 1983. Wright sought monetary damages and declaratory and injunctive relief.

In January 2014 the superior court granted partial summary judgment in favor of the defendants, dismissing Wright's professional negligence claims as barred by the two-year statute of limitations; the court also relied on res judicata based on his prior federal litigation of those claims. But the court determined that Wright's civil rights claims based on a theory of deliberate indifference to his medical needs under 42 U.S.C. §1983 were not barred by the statute of limitations or res judicata because of the continuing violations doctrine.[10] Wright then amended his complaint, reasserting both his medical malpractice and deliberate indifference claims.

In January 2015 the court granted summary judgment in favor of the defendants, ruling that Wright could not show deliberate indifference to his medical condition by the defendants as a matter of law. Based on a review of Wright's medical records relating to his hearing loss complaints, the court concluded that "Wright's

---

[8]    Wright dated his complaint May 1, 2013. However, the complaint was not actually filed until June 7, 2013.

[9]    Anding was a Health Services Administrator at Hudson Correctional Facility, employed by GEO Group. She investigated and responded to Wright's medical grievances filed in 2010 and 2011 while he was incarcerated at Hudson. Dr. Bingham was the Clinical Director for DOC and a member of the Medical Advisory Committee.

[10]    *See Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971) ("The continuing wrongful conduct of the defendant toward the claimant which establishes a status quo of continuing injury may also give rise to a continuing cause of action."); *see also Neel v. Rehberg*, 577 F.2d 262, 263-64 (5th Cir. 1978).

requests for medical care were responded to within a reasonable amount of time with medical care and treatment provided." The court found that "[m]edical care was not unreasonably withheld, if anything, . . . Wright received attentive care during periods of his incarceration." The court noted that "Wright ha[d] undergone several examinations by different physicians, none of whom . . . recommended hearing aids" and concluded that it was "not convinced that his level of hearing loss [rose] to a serious medical need when . . . Wright [could] still carry on normal conversations."

Wright filed a motion for reconsideration, asserting that the superior court had ignored the fact that Dr. Lisa Steffy had prescribed hearing aids in October 2010 when Wright was at Hudson and that the court failed to take into account one exhibit related to that claim. That exhibit allegedly demonstrated that Dr. Steffy had prescribed hearing aids to Wright. On April 29 the court denied Wright's motion for reconsideration, responding that "[w]hile one of the exhibits specified by Mr. Wright was not in evidence, [the] [c]ourt was aware of other exhibits that showed similar note-taking by [Dr. Steffy]." The court also disagreed with Wright's interpretation of these notes as a "prescription" due to Wright's "subsequent referrals to ENT specialists and audiologists not directly employed by the Department of Corrections." The court pointed out that none of the specialists prescribed hearing aids; at most, Dr. List recommended a Pocket Talker.

Wright appeals.[11] In his Statement of Points on Appeal, Wright argues that (1) the superior court ignored the "exhibit in [the] record showing that Dr. . . . Steffy had

---

[11] In his Statement of Points on Appeal Wright specifically appeals only the April 29 final judgment that corresponds to the date of the superior court's denial of his Motion for Reconsideration. Because Wright is pro se and because "[w]e apply a more lenient standard to pro se litigants," we review the superior court's underlying decision on the motion for summary judgment rather than just the denial of his motion for reconsideration. *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062-63 (Alaska 2005).

requested hearing aids for both ears" and (2) the court should have granted Wright additional time to meet pretrial deadlines due to his incarceration. In his opening brief, Wright offers additional arguments. Specifically, Wright complains that (1) Superior Court Judge Patrick J. McKay was biased against him and should have recused himself; (2) the superior court ignored evidence that Dr. Steffy recommended hearing aids for Wright; (3) the defendants failed to show that they treated Wright for an ear infection between November 2010 and February 2011; (4) correctional officers threatened Wright because of his continual requests for medical treatment of his hearing loss; (5) the defendants violated Wright's constitutional rights to keep his medical records private under HIPAA[12]; (6) Wright's doctor lied and plotted with correctional officers to cover up Wright's hearing problems;[13] (7) the superior court ignored evidence that since his release, Wright had been prescribed hearing aids; and (8) the superior court ignored evidence that Wright's pre-incarceration hearing examinations suggested that his hearing was poor.

---

[12] Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d–6 (2012). In general, HIPPAA governs confidentiality of medical records and regulates how covered entities can use or disclose individually identifiable health information concerning an individual. *See generally* 45 C.F.R. §§ 160, 164 (2016). HIPPAA regulations do not confer a private right of action on an individual. *Want v. Express Scripts, Inc.*, 862 F. Supp. 2d 14, 19 (D.D.C. 2012); *Doe v. Rankin Med. Ctr.*, 195 So. 3d 705, 713 (Miss. 2016) (citing *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006)).

[13] In alleging this claim, Wright appears to suggest that Dr. Eusterereen violated his Hippocratic Oath. The Hippocratic Oath is "[a]n oath of ethical professional behavior sworn by new physicians." *Hippocratic Oath*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016). However, the Hippocratic Oath is not legally binding; therefore, we construe this argument as a claim that Dr. Eusterereen lied and plotted with correctional officers to cover up Wright's hearing problems.

These claims are best construed as supporting three broader legal arguments and multiple miscellaneous claims. First, Wright appears to argue that the superior court erred in denying Wright's motion to disqualify Judge McKay for cause and that Judge McKay should have recused himself. Second, Wright appears to raise medical malpractice claims, suggesting that medical staff did not appropriately treat his ear infection, which ultimately caused his hearing loss. The superior court granted summary judgment in favor of the defendants on these medical malpractice claims, so Wright is arguing that the court erred in granting summary judgment on these claims. Third, Wright appears to argue that the defendants exhibited deliberate indifference to his serious medical need for hearing aids and, therefore, the court erred in granting summary judgment in favor of the defendants and denying Wright's request for reconsideration on this issue. We categorize Wright's remaining claims as miscellaneous arguments.

## III.    STANDARD OF REVIEW

"The refusal by a judge to be recused from a case is reviewed for an abuse of discretion."[14] We "reverse a judge's refusal to step down from a case only when it appears 'patently unreasonable' or when 'a fair-minded person could not rationally come to [the same] conclusion on the basis of known facts.' "[15]

---

[14]    *In re Estate of Bavilla*, 343 P.3d 905, 908 (Alaska 2015) (quoting *Jourdan v. Nationsbanc Mortg. Corp.*, 42 P.3d 1072, 1082 (Alaska 2002)).

[15]    *Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 612 n.21 (Alaska 2007) (alteration in original) (quoting *Carr v. Carr*, 152 P.3d 450, 458 (Alaska 2007)).

"Grants of summary judgment are reviewed de novo and will be upheld if there are 'no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.' "[16]

> [A] non-moving party does not need to prove anything to defeat summary judgment. But a non-moving party cannot create a genuine issue of material fact merely by offering admissible evidence — the offered evidence must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence.[17]

"We apply a more lenient standard to pro se litigants"[18] and "consider pro se pleadings liberally in an effort to determine what legal claims have been raised."[19] But "[t]o avoid waiver, a pro se litigant's briefing must allow his or her opponent and this

---

[16]    *Hymes v. DeRamus*, 119 P.3d 963, 965 (Alaska 2005) (quoting *Indus. Commercial Elec., Inc. v. McLees*, 101 P.3d 593, 597 (Alaska 2004)).

[17]    *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014) (emphasis omitted).

[18]    *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062-63 (Alaska 2005).

[19]    *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012).

court to discern the pro se's legal argument. Even a pro se litigant . . . must cite authority and provide a legal theory."[20]  And

> [w]e will not review new arguments or points of error that were neither raised before the trial court nor included in the points on appeal unless the issue presented is "1) not dependent on any new or controverted facts; 2) [is] closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings, or if failure to address the issue would propagate plain error."[21]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Abuse Its Discretion By Denying Wright's Motion To Disqualify Judge McKay For Cause.

In Wright's motion to disqualify Judge McKay for cause, Wright argued that Judge McKay was biased against him because Judge McKay had presided over Wright's criminal case[22] and because Wright sued Judge McKay for a matter related to his criminal trial.[23]  Wright further explained that he and Judge McKay "have a long

---

[20]  *Casciola*, 120 P.3d at 1063; *see also* Alaska R. App. P. 212(c)(1)(I) (requiring briefs to contain "[a]n argument section, which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on"); *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 n.7 (Alaska 1991) (holding that a pro se litigant's arguments were waived due to inadequate briefing).

[21]  *O'Callaghan v. State*, 826 P.2d 1132, 1133 n.1 (Alaska 1992) (second alteration in original) (quoting *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 115 (Alaska 1990)); *see also Tillmon v. Tillmon*, 189 P.3d 1022, 1030 n.28 (Alaska 2008) (citing *McMullen v. Bell*, 128 P.3d 186, 190 (Alaska 2006)).

[22]  *See State v. Wright*, No. 3AN-99-09876 CR (Alaska Super., Sept. 17, 2009).

[23]  *See Wright v. McKay et al.*, No. 3AN-08-09294 CI (Alaska Super., Mar. 4, 2011).

history of conflict with each other." Judge McKay denied Wright's motion, declaring that he could be "fair and impartial." Wright asserts similar arguments on appeal, namely that Judge McKay "should have removed himself from Wright's case because he was Wright's trial [j]udge on his criminal matter and was removed from Wright's criminal matter because he was violating Wright's constitutional rights."[24]

Pursuant to AS 22.20.020(c), when a judicial officer denies a motion for disqualification, the decision is reviewed by another judge assigned for the purpose by the presiding judge of the next higher level of courts. Superior Court Judge Andrew Guidi was assigned to review Judge McKay's denial of Wright's motion to disqualify and upheld the decision. Judge Guidi acknowledged that Judge McKay presided over a criminal case in which Wright was a defendant and that Wright once filed a civil suit naming Judge McKay, among others, as a defendant. But Judge Guidi concluded that "[t]he mere fact that Judge McKay once presided over a criminal case against Wright is not recognized as grounds for disqualification" because "[t]here is no rule, Canon, or statute limiting the number of times a judge may preside over a case involving a particular party." And with regard to Wright's allegations that Judge McKay was biased because Wright once sued Judge McKay, Judge Guidi noted that the suit alleged judicial misconduct against Judge McKay for alleged procedural and constitutional errors related to Wright's criminal case, but Wright never properly served the complaint on Judge McKay, and Wright ultimately dismissed the action entirely. Judge Guidi also explained that there was "no connection between the claims and issues in the present action and the claims and issues in the 2008 lawsuit Wright filed against Judge McKay" and that there was no evidence of bias in the record.

---

[24] Wright's criminal case was reassigned from Judge McKay to Superior Court Judge Michael Spaan.

Alaska Statute 22.20.020 sets forth the conditions under which a judicial officer may be disqualified for cause. The Alaska Code of Judicial Conduct's canons are "intended to establish standards for ethical conduct of judges."[25] But neither AS 22.20.020 nor the Judicial Canons prevent a trial judge who presided over a party's criminal case, or who was sued by the party, from presiding over other cases involving that party. Furthermore, Wright fails to point to any specific evidence beyond his unsubstantiated allegations that Judge McKay is biased against him, and there is no meaningful connection between the past cases involving Wright and the case at hand. Therefore, the superior court's determination on this matter does not appear "patently unreasonable," and a fair-minded person could "come to [the same] conclusion on the basis of known facts."[26] We uphold the superior court's decision to deny Wright's motion to disqualify Judge McKay for cause.

B.     **The Superior Court Did Not Err In Granting Summary Judgment On Wright's Medical Malpractice Claims.**

Wright claims that "the defendants did not show actual evidence that Wright was treated for any ear infection from November 2010 until February 2011, with the exception of [providing] ear wax drops." He claims that "[n]o examination was ever performed upon Wright during that one year period which would have shown that

---

[25]     Alaska Code of Jud. Conduct, Preamble. We acknowledge, however, that these canons are "not designed or intended as a basis for civil liability or criminal prosecution." *Id.*

[26]     *Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 612 n.21 (Alaska 2007) (alteration in original) (quoting *Carr v. Carr*, 152 P.3d 450, 458 (Alaska 2007)).

Wright's ear was severely impacted and his hearing damaged by non-treatment." These claims are best characterized as medical malpractice claims.[27]

The superior court granted summary judgment on the basis that Wright's claims were barred by the statute of limitations and res judicata. Wright's argument that the defendants failed to treat him for an ear infection and that this failure caused his hearing loss does not raise a genuine issue of material fact relevant to the legal basis of the superior court's grant of summary judgment.

We affirm the superior court's decision to grant summary judgment on statute of limitations grounds. Under AS 09.10.070(a), actions for personal injury must be brought within two years. A claim accrues when a person "knows or should know that he has a claim."[28] Wright alleged in his earlier federal action that a hearing exam from May 25, 2011 confirmed damage to his hearing. Wright also alleged that the May 25 hearing exam, when compared with tests conducted by his previous employers, showed his hearing had deteriorated while in prison due to DOC's negligence. Assuming for sake of discussion that his allegations are true, these statements demonstrate that Wright knew he had a malpractice claim as of May 25, 2011 and it was at that time (at the latest) that the two-year limitations period for his claim began to run. Wright was required to file his malpractice action before May 25, 2013. But Wright filed

---

[27]     Wright characterized these claims as "professional negligence" claims in his complaint. The superior court used his label but also described them as "pure civil tort claims." Because Wright's allegations here concern the response of medical professionals on the prison staff and sitting on the Medical Advisory Committee who were aware of Wright's hearing complaints, we characterize Wright's allegations regarding the deficiency of their response as medical malpractice claims. We note, however, that the statute of limitations for medical malpractice claims and "pure civil tort claims" are identical. *See* AS 09.10.070(a).

[28]     *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1249 (Alaska 2001); *see also Pedersen v. Flannery*, 863 P.2d 856, 856-58 (Alaska 1993).

his complaint on June 7, 2013, after that deadline passed. Therefore, we conclude Wright's medical malpractice claims are time-barred by AS 09.10.070(a), there is "no genuine issue of material fact" related to the statute of limitations, and DOC was "entitled to judgment as a matter of law."[29]

C. **The Superior Court Did Not Err In Granting Summary Judgment On Wright's Claims That The Defendants Were Deliberately Indifferent To Wright's Serious Medical Needs.**

Wright asserted a claim in his amended complaint that the corrections defendants were deliberately indifferent to his medical needs. In granting the defendants' motion for summary judgment on this claim, the superior court ruled that Wright

> fail[ed] to show a violation of his constitutional rights by deliberate indifference of the medical staff at any point. Mr. Wright's requests for medical care were responded to within a reasonable amount of time with medical care and treatment provided. . . . Medical care was not unreasonably withheld, if anything Mr. Wright received attentive care during periods of his incarceration.

The court further explained: "Mr. Wright has undergone several examinations by different physicians, none of whom have recommended hearing aids. . . . Despite Mr. Wright's preference for a specific remedy, when treatment recommendations did not include hearing aids the medical personnel were not, in fact, being deliberately indifferent." It is this statement that Wright contends was error. Wright argues that a trial exhibit shows that a Hudson Correctional Facility physician *did* prescribe hearing

---

[29]     *Hymes v. DeRamus*, 119 P.3d 963, 965 (Alaska 2005) (quoting *Indus. Commercial Elec., Inc. v. McLees*, 101 P.3d 593, 597 (Alaska 2004)). We do not reach the superior court's res judicata ruling because we affirm on statute of limitations grounds.

aids, that the court failed to consider this fact, and inferentially that this fact raised a genuine issue of material fact precluding summary judgment.

Wright is correct in part and incorrect in part. Wright is correct in this respect: the record includes a page from Wright's Hudson medical chart, entitled "Physician's Orders," that records an entry by Dr. Lisa Steffy stating "Hearing aid for both ears." In fact, the record contains at least two copies of the same Physician's Order page — one marked as trial exhibit AGO-000719, the other marked as trial exhibit AGO-00570.

Wright is incorrect in the following regard: Wright argues that the superior court failed to consider Dr. Steffy's chart entry. Wright made this same argument to the superior court in his motion for reconsideration. The court responded:

> The motion alleges that this Court was unaware that Mr. Wright had been prescribed hearing aids by Dr. Steffy. While one of the exhibits specified by Mr. Wright was not in evidence, this Court was aware of other exhibits that showed similar note-taking by medical staff. Mr. Wright's interpretation of these notes as a prescription is an assumption with which this Court cannot agree due to Mr. Wright's subsequent referrals to ENT specialists and audiologists not directly employed by the Department of Corrections.

We draw several conclusions from what has just been recited. There was an entry in Wright's Hudson Correctional Facility medical chart by one of the physicians who provided medical care for Wright while he was incarcerated at Hudson that stated "Hearing aid for both ears." We note the title of the page is "Physician's Orders." We assume for purposes of our analysis that Dr. Steffy's note was a recommendation or physician's order for hearing aids. We also conclude that the superior court was aware of this recommendation when it granted summary judgment on Wright's deliberate indifference claim. Whether Dr. Steffy's chart entry creates a genuine issue of material

fact precluding summary judgment depends on the nature of the legal claim that was the subject of the summary judgment motion. In other words, is Dr. Steffy's recommendation or the failure by Hudson or DOC to provide hearing aids to Wright material to the issue of deliberate indifference?

"Incarcerated prisoners have a constitutional right to have their medical needs met."[30] In *Estelle v. Gamble*, the United States Supreme Court stated that the "elementary principles [of the Cruel and Unusual Punishment Clause of the Eighth Amendment] establish the government's obligation to provide medical care for those whom it is punishing by incarceration."[31] The Court reasoned:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common view that "It is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."[32]

To sustain an action under § 1983,[33] Wright must show: "(1) that the conduct complained of was committed by a person acting under color of state law and

---

[30] *Goodlataw v. State, Dep't of Health and Soc. Servs.*, 698 P.2d 1190, 1193 (Alaska 1985).

[31] 429 U.S. 97, 103 (1976) (alteration in original).

[32] *Goodlataw*, 698 P.2d at 1193 (alteration in original) (quoting *Estelle*, 429 U.S. at 103).

[33] 42 U.S.C. § 1983 (2012).

(2) that the conduct deprived [him] of a [federal] constitutional right."[34] The Supreme Court has previously concluded that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' "[35] and that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."[36] Even so, the Supreme Court has further explained:

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[37]

---

[34] *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 586 (Alaska 2007) (alterations in original) (quoting *Crawford v. Kemp*, 139 P.3d 1249, 1255 n.10 (Alaska 2006)).

[35] *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

[36] *Id.* at 105.

[37] *Id.* at 105-06; *see also Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970) ("Prison officials and medical officers have wide discretion in treating prisoners, and a simple claim of malpractice does not give rise to a claim under sections 1981 or 1983. However, failure or refusal to provide medical care, or treatment so cursory as to amount to no treatment at all, may, in the case of serious medical problems, violate the Fourteenth Amendment." (citations omitted)).

We have previously held that deliberate indifference "mean[s] the [corrections] official 'knows of and disregards an excessive risk to inmate health and safety.' "[38] To reach the standard of deliberate indifference to a serious medical need, "an inmate must first show a serious medical need by demonstrating that failure to treat the condition could result in 'further significant injury or the unnecessary and wanton infliction of pain.' "[39] Examples of a "serious medical need" include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."[40] "The inmate must then show that a prison official was deliberately indifferent to that need, meaning the official '[knew] of and disregard[ed] an excessive risk to inmate health and safety.' "[41]

With these legal standards in mind, it is clear that the superior court did not err in concluding that there was no genuine issue of material fact on the question whether DOC, Hudson Correctional Facility, and their physicians were deliberately indifferent to Wright's hearing complaints and requests for hearing aids. Dr. Steffy's chart note was written in October 2010. The record does not indicate Dr. Steffy's medical speciality or who she was employed by. According to Wright's appellate brief, she is a "well renowned physician in private practice in Colorado." If this is true, it must be the fact

---

[38]     *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 8 (Alaska 2012) (quoting *Hertz v. Beach*, 211 P.3d 668, 678 (Alaska 2009)).

[39]     *Id*. (emphasis omitted) (quoting *Hertz*, 211 P.3d at 677-78).

[40]     *Hertz*, 211 P.3d at 678 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

[41]     *Larson*, 284 P.3d at 8 (quoting *Hertz*, 211 P.3d at 678).

that she was retained by Hudson to evaluate Wright in the correctional facility because she entered her physician orders on a Hudson Correctional Facility medical record form.

One physician's ordering of hearing aids does not in itself raise a material question of fact of deliberate indifference, nor does the fact that hearing aids were not provided as a result of this order. We accept as true for purposes of the motion for summary judgment that Dr. Steffy concluded hearing aids were necessary. We also note that it was uncontested that Hudson Correctional Facility had not only previously arranged for Wright to be seen by medical staff 11 times in the previous 11 months for hearing issues, but shortly after he was seen by Dr. Steffy, Hudson arranged for him to be seen by specialists in ear medicine. In January 2011 Wright was evaluated by prison medical staff for his continuing complaints of hearing loss, and Hudson referred him to an ENT for further evaluation. A doctor of audiology thereafter examined Wright and concluded he had "normal middle ear function bilaterally" and did not recommend hearing aids. Another referral was approved for an "Audiology/ ENT consult" in April 2013. That evaluation by Denver Health reported "no significant change from [the] previous audio[logical evaluation] on 5/25/11," and again no recommendation or prescription was made for hearing aids.

The question for purposes of analyzing a claim of deliberate indifference is not just whether hearing aids were actually medically necessary; the question is whether the corrections official "was deliberately indifferent to that need, meaning the [corrections] official '[knew] of and disregard[ed] an excessive risk to inmate health and safety.' "[42] Like the superior court, we simply cannot conclude that Hudson Correctional Facility disregarded Wright's complaints of hearing loss and demands for hearing aids. To the contrary, Hudson's responses to Wright's complaints both through its own

---

[42] *Id.* (quoting *Hertz*, 211 P.3d at 678).

medical staff and through its referrals to medical specialists outside of the facility was anything but indifferent. And Hudson was not indifferent to Dr. Steffy's recommendation for hearing aids — following her chart note Hudson arranged for Wright to be evaluated by hearing specialists. It may be that there was a professional difference of opinion between Dr. Steffy and the consulting ear medicine experts. But this difference of opinion between physicians does not create a genuine issue of material fact as to whether Hudson Correctional Facility disregarded Wright's hearing loss complaints and demand for hearing aids. Hudson and DOC were entitled to judgment as a matter of law, and we affirm the superior court's grant of summary judgment against Wright on his claims of deliberate indifference.

### D.  Wright Waived His Other Miscellaneous Claims.

Despite our general "policy against finding unintended waiver of claims in technically defective pleadings filed by pro se litigants,"[43] we hold that Wright waived his claims that correctional officers threatened Wright due to his continual requests for medical treatment; the corrections defendants violated Wright's constitutional rights to keep his medical records private under HIPAA; Dr. Eusterereen lied and plotted with correctional officers to cover up Wright's hearing problems; and the superior court ignored evidence that he was prescribed hearing aids post-release. Wright failed to raise these claims in the superior court, and he did not include these issues in his Statement of Points on Appeal.[44]  Furthermore, these claims are "dependent on . . . new or

---

[43]  *Mitchell v. Mitchell*, 370 P.3d 1070, 1083 (Alaska 2016) (quoting *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005)).

[44]  We note that although Wright's "Opposition to Motion and Memorandum for Summary Judgment" mentioned that he had previously filed a Prisoner Grievance with DOC claiming that two correctional officers violated Wright's constitutional rights to keep his medical records private under HIPAA, Wright did not make this specific
(continued...)

controverted facts," are not readily "gleaned from [Wright's] pleadings" in the superior court, and not sufficiently "related to [Wright's] trial court arguments."[45]  Under these circumstances  "[w]e will not review new arguments."[46]

Further, "[a]s a general matter, issues not briefed or only cursorily briefed are considered waived."[47]  Failure to develop an argument constitutes a waiver of that argument, and the argument will be considered abandoned.[48]  And "[w]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[49]  This is true for pro se litigants as well as represented litigants. Though "[w]e apply a more lenient standard to pro se litigants"[50] and "consider pro se pleadings liberally in an effort to determine what legal claims have been raised,"[51]  "[t]o avoid waiver, a pro se litigant's briefing must allow his or her opponent and this court

---

[44](...continued)
claim to the superior court.

[45]    *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 115 (Alaska 1990) (quoting *State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987)); *see also Tillmon v. Tillmon*, 189 P.3d 1022, 1030 n.28 (Alaska 2008) (citing *McMullen v. Bell*, 128 P.3d 186, 190 (Alaska 2006)).

[46]    *O'Callaghan v. State*, 826 P.2d 1132, 1133 n.1 (Alaska 1992).

[47]    *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001).

[48]    *Id.*

[49]    *Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015) (quoting *Glover v. Ranney*, 314 P.3d 535, 545 (Alaska 2013)).

[50]    *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062-63 (Alaska 2005).

[51]    *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012).

to discern the pro se's legal argument. Even a pro se litigant . . . must cite authority and provide a legal theory."[52]

In his Statement of Points on Appeal Wright argues that the superior court erred in failing to allow him additional time to meet his pretrial deadlines due to his incarceration. But in his five-page brief,[53] Wright fails to discuss any specifics, even in a cursory manner, regarding his pretrial deadlines argument. We conclude that Wright waived his pretrial deadline argument on appeal. In addition, Wright argues that the superior court ignored evidence of three hearing examinations conducted prior to his incarceration demonstrating that his hearing was damaged. But Wright again fails to develop this argument in any substantive way and fails to explain how these allegations relate to his current claims. We hold that Wright waived this issue, too.[54]

## V. CONCLUSION

We AFFIRM the superior court's decisions to deny Wright's motion to disqualify Judge McKay for cause and to grant summary judgment in favor of the defendants on Wright's medical malpractice and deliberate indifference claims.

---

[52] *Casciola*, 120 P.3d at 1063. *See also* Alaska R. App. P. 212(c)(1)(I) (requiring briefs to contain "[a]n argument section, which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on"); *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1991) (holding that a pro se litigant's arguments were waived due to inadequate briefing).

[53] Wright did not file a reply brief.

[54] We also note that this argument is not material. Wright was not prescribed nor did he use a hearing aid before his incarceration. Furthermore, none of the pre-incarceration examinations were performed by an audiologist or hearing specialist, and each pre-incarceration examination recommended that Wright see a hearing specialist. Wright saw a hearing specialist three times while he was incarcerated.